Thank you, Your Honor. My name is Tom Tao, and I am here representing the plaintiffs. The co-counsel is Jeff Simcovic, and he has graciously allowed me to take all of the time, so you don't need to worry about that issue. All right, thank you. But he is very valuable in this case anyway. I also want to introduce Terry Mapp. Terrell Mapp is the counsel for the Housing Authority, and she is in the audience. And I'm sure you'll get to meet the government counsel shortly. I do want to address, well, first of all, let me say after sitting here for almost three hours now on criminal cases, I hope you can take a slight different approach, because this is not a criminal case. We know that. But I do want to address the question of jurisdiction, as the court has requested. I just hope I don't spend too much time on that. I would ask the court if I can reserve five minutes for rebuttal. And with regard to jurisdiction, yes, 28 U.S.C. 1291 does require that the appeal must be final, but there are some exceptions. The first exception, I want to review several, but the first exception is the denial of an injunctive relief under 1292-1A is an exception. Here, although the district court didn't say so in so many words in its order, or in the judgment that this is a denial of an injunction, it clearly was. And I say that because we requested an injunctive relief in our complaint. This court in Marceau 2, Marceau 3, I'm sorry, and in Marceau 2, did refer to the fact that plaintiff is seeking an injunction, and by granting summary judgment, that request was denied. So we think there is an injunctive relief denial. Why didn't you seek Rule 54-B certification? That's a good question, and I don't know that I have a good answer for it. That's not a good answer. I'm sorry. Well, I want to be as honest as I can. But, yes, I think that would have probably been a good idea. I'm not sure that I was optimistic the judge would have granted it, but, yes, that's a possibility, and, yes, we should have done that. Perhaps we didn't. The status of the case is that that was not done, and that's as much as I can say. I do want to say also, however, that, oh, with regard to the injunctive thing, with the recent Supreme Court case in Carson, well, not recent, it's 1981, Supreme Court case of Carson v. American Brands, Inc., 450 U.S. 79 at page 86 through 89, I believe the court makes it quite clear that if the decision of the district court has the effect of denying an injunction. Well, now, is there anywhere in the third complaint where the plaintiffs seek injunctive relief? I couldn't find it. Oh, let me refer you to paragraph 27 at page 34, and, yes, there is. What does it say? Let me see. Representative plaintiffs and other class members seek adequate remedies, including an order or orders requiring defendant to comply with the federal law. I guess we didn't ask, effectively, for an injunction. We didn't use the magic words. I didn't say that word, yeah. You're right. Okay. But we did ask for an order requiring the defendant. So you've got to make the argument that it was the practical effect of denying an injunction. Exactly. You can't say you asked for an injunction because it's not there. All right. All right. In the case cited in our order, Gamboa v. Chandler, you know, I have a hard time distinguishing this case from that case because there we said, it's on page 91, although plaintiffs did request an injunction, the contested summary judgment orders did not expressly grant or deny that request. That's true here, isn't it? That is true here. That's what I said at the beginning. If that's so, Gamboa goes on to state, the district court's orders did have the practical effect of denying the injunctive release against the secretary, but such orders may only be appealed if they, quote, can be effectively challenged only by an immediate appeal. Citing Carson now, that's not true here, is it? That can only be challenged by an immediate appeal. You can challenge it later after the case is over. We could challenge it after the case is over. I guess that's true for any injunctive release. Well, no, because something might happen. But, so my question is, how does your case differ from Gamboa? I really believe that the effect of the judge's order is the denial of our request for an order requiring that. Well, that was true in Gamboa, but we held there was no jurisdiction. I understand that. And I am citing that as the first reason. I believe there's an exception. And I also want to call this court's attention to the language of this court in Thompson v. Enomoto, sufficiently injunctive in nature, and I think this is sufficiently injunctive in nature. Let me just ask, though, how can we have jurisdiction if the claims against the Blackfeet are stayed pending exhaustion? Well, because it is effectively an injunctive case. Right, so that's the same answer. That's the same answer. Item 2, and that's the first one of the exceptions I ask you to consider. Item 2, I believe it is also appealable under the Gillespie case, the Gillespie v. U.S. Steel, the United States Supreme Court case of 379 U.S. 148 at 152. The pragmatic finality doctrine, I admit that that has not been treated with great favor in the courts, but there the Supreme Court has said you need to balance the inconvenience of costs of piecemeal litigation versus the injustice of delay. And I think we have far more injustice of delay in this case than they did in the Gillespie case. It is also unique for a couple reasons. Number one, the district court, when this case was remanded, insisted that we strike all reference to the housing authority claims from the complaint. I filed twice, and it was rejected, filed the third amended complaint, which only said as a matter of passing that we originally filed a housing authority complaint. Probably your best argument is that the government initially takes the view that we have jurisdiction, too. And I don't know if they're going to continue to say that, but two wrongs don't create jurisdiction. I understand that. That's part of it. And I'm wondering if at the end of the day, if we found that we didn't have jurisdiction, would it make sense to defer submission on this case for you to go get a 54B certification, or is our only option to dismiss this appeal? I kind of think the government said there was jurisdiction because they're sick of you and they just want to get that part of it over and done. But I'm not so sure that they're going to get up and be able to say with a straight face that the court has jurisdiction. I want to refer you to footnote one in their brief, which does say exactly that. That is correct. And I don't think they want to go back and go through this whole argument. And that's the point of my concern, is that we are insisting that there's 150 houses that are unsafe. We're on Marcel 4, too. This is Marcel 4, or whatever. That's correct. So, you know, we're spending a lot of time on this, too. That's true. I agree. But there's 150 houses, and we think in every single one there's people that are sick, and the government isn't doing anything about it. So I think that's a real argument for injustice of delay. Well, okay, if we get – I think – did you have another question? Third – no. If you get past – let's just – since we're going to – One more thing on that issue, and then may I go into the merits of the appeal? Well, I think you should go into the merits because so far you haven't created jurisdiction out of whole cloth here. We have yesterday filed a stipulation and motion in the district court for dismissal of all the housing authority claims. Now, there's a problem with that, I admit. By the way, the Ninth Circuit has said that subsequent events can validate a prematurely filed appeal, and that's in Anderson v. Allstate, 630 Fed Second, 677. That's 681, 1980 case. It's also supported in Etheridge v. Harbor House Rescue. Well, I'm assuming that the government hasn't agreed to this at this point. Is that right? Correct. They said they didn't want to get involved in a stipulation in the district court. The big problem is I suspect and I fear that the court is going to say, the moment we file a notice of appeal, they lost jurisdiction, and they will say we don't have any authority to issue that order. So then, Judge Callahan, that's when I ask for exactly what you said earlier, and that is at last resort, if you don't agree with any of the other of my arguments on jurisdiction, please only remand for the very limited purpose of determining what the status of the housing authority claims are. Well, we're going to just have to call it the way we see it according to the law. We can't be an extension of either of the two of you, but why don't you go on to the merits because I think that there's a, obviously, you've got the statute of limitations issue that lost. The last time that the case was here, there really were no facts, and I'm very sorry that Justice Harry Ferguson couldn't see the case now. He took quite an interest in this case, and now we have the facts. We have 31,000 pages of administrative record that was submitted. The story is very simple. I'm going to review it very, very quickly. Wooden foundations. These 156 houses were built with wooden foundations. Wooden foundations are appropriate in some cases, but not all locations, and it primarily depends on the soil, the soil conditions. Isn't the question really not the appropriateness of wooden foundations, which is a merit, but whether or not you've asserted those claims that they're defective in a timely manner? That is correct, and I need to explain, in effect, that this was not done pursuant to the regulations and the housing standards adopted by the regulations. Therefore, it was ultra-virus. Therefore, it's a substantive challenge. Therefore, it is timely. But the clock on substantive APH claims begins to run when the agency is, action is applied to the plaintiff, and here I'm looking at it. Why isn't 1980 the last date that I can look at here, when construction on the homes was complete and their design defects were apparent? With all due respect, Your Honor, I think that the key under the Wind River Mining Corporation case, which is the case that I want to call your attention to, it commences when the true state of affairs is discovered by someone who has standing. The true state of affairs was not discovered until 1997. Well, it depends on what you consider the true state of affairs. In other words, the Ultra-Virus Act is, you know, using wood where it shouldn't be used, and you knew that right from the get-go. The government knew that. But the government did approve. Wasn't that protested at the time? It was. It was, but not for health reasons. Well, it doesn't matter the reasons. You knew it was a, you know, wrongful act. We, the government approved these, we think, without going through the soil engineering study that needed to be made. That is the critical part. And, yes, there was a protest at the time. They were concerned about the structural defects. They were not concerned about the health concerns. The health concerns did not become an issue until the health concerns came out 20 years later. That's the concern that I want to call this Court's attention to. That's the concern that becomes a substantive challenge, and that's the concern that is well within the six-year statute of limitations. And I believe that there's simply no facts to the contrary. The health concerns did not come forward. It was not an issue. Yes, there were structural concerns. It was a question of whether there was a bowing of the foundations. That was not an issue with these people. The standing concern, the concern that gives them standing is they got sick, and that didn't happen, and they didn't know about it. The true facts we're not aware of until 1997. Do you want to reserve the balance of your time for rebuttal? May I say just one real quick sentence? You can, but it's on your time. Thank you. I do want to make reference to the second issue in the case, and that is that it's not a statute of limitations issue. The administrative record clearly shows a properly formed request for assistance. That's this Court's language. By the Housing Authority, was presented both in the Chairman Old Chief's letter to the Secretary of HUD, Secretary Cuomo, in ER 123. You can read it. In Miller's letter to HUD, Miller was the Executive Director of the Housing Authority to the contact person in HUD, and that's in Excerpts of Record 134, 135. Counsel, let me ask you about that. What is your best source that HUD was obligated to respond to appellant's request for help with something other than funding? I think that funding is a key to this, yes. I think that you can't fix these without spending some money, and that is the dilemma that these folks find themselves in, because HUD says, we can't do anything until Congress appropriates the money. Congress says, we can't do anything because you can't violate the priorities that are set forth in the formula. If you do, every congressman that lives in some other state is going to jump on you and you're going to lose the bill. So we're in a catch-22. Funding is critical. Funding has to be done. If this Court or some Court can't come in and say, we've got to do something to fix these houses, it's not going to get done. You mentioned Old Chief's letter in the Miller memo, but they didn't create a legal duty, did it, requiring HUD to respond? Well, I think they did. I think they did for two reasons. Number one, this is from the chief of the tribe to the head of the department. And number two, there is a requirement in the law. Congress passed the law saying, provide safe, decent, sanitary housing. And the chairman of the tribe was saying, we haven't got sanitary, safe housing. We want you to fix it. I think they had an obligation to fix it. And there is a trust responsibility in 25 U.S.C. 4101 where they say in Mahazda that government has a special responsibility for Indians. They haven't fixed it. Thank you. I don't want to take any more of your time. I understand the response. May it please the Court, I'm John Cappell. Good afternoon, 1201. Thank you, Your Honor. Good afternoon. I'm with the appellate staff of the Civil Division, U.S. Department of Justice, and I'm representing the appellee. Are you going to handle the total argument? Yes, Your Honor. Okay, so enlighten us on appellate jurisdiction now. Your Honor, the Court is absolutely correct that at this juncture there is not appellate jurisdiction under the en banc decision in Gamboa v. Chandler. It's clear that this Court does not have jurisdiction. So when were you going to get to it? Your Honor, we didn't. If we hadn't sent a letter. We actually, as the Court recognized, the government tried to save jurisdiction. We recognized that there was a jurisdictional problem because there was no final judgment, but in footnote one we came up with the theory that because they were seeking injunctive relief that that was an effective denial and that was good enough, but regrettably we did not discover this Court's Gamboa decision, which is dispositive and it refutes that theory. Go ahead, I'm sorry. Given your position then on that, do you think we should have a limited remand until the District Court can act on this motion? Your opponent says he just filed in the District Court. Your Honor, there have actually been further developments on that. You know about that motion, I assume. Yes, I know about that motion, and the government did not agree to it because we recognize there's a jurisdictional problem with that as well under this Court's decision, which we brought to opposing counsel's attention in Sneller v. City of Bainbridge Island, 606 Fed 3rd, 636 at 638, where the Court said that as a general rule, simply dismissing without prejudice does not create appellate jurisdiction precisely because there's a concern about manipulating appellate jurisdiction, which this Court does not take kindly to. So could we defer submission of this case to get 54B certification? Yes, Your Honor. The Court certainly could do that. That would be the appropriate course for the plaintiff to go back to file a motion essentially for an indicative ruling, but if this Court wanted to, it could issue a limited remand order for this purpose as well. And then the plaintiff could file a 54B request and also a request to actually say explicitly that the District Court denied injunctive relief in its summary judgment order and amend it non-protunct, which may well, that might also solve the Gamboa problem. Well, but what about the issue? I think Judge Callahan raised it by her going through the complaint. There really is no prayer for declaratory, I mean for injunctive relief. Well, Your Honor, that is certainly a valid question and I'm not sure that this Court has ever held, but after having been burned with Gamboa, I'm not sure I want to make any firm representations. I'm not sure that this Court has ever held that one actually has to, that a plaintiff has to state explicitly in the complaint that it's seeking an injunction as opposed to requesting an order, a remedy for an order to provide equitable relief, to require the defendant to do something. But again, but certainly that is, it is a valid point that the complaint doesn't explicitly ask for injunctive relief. So our problem would be solved if the plaintiff's motion to dismiss the housing authority were to dismiss with prejudice, huh? Were to dismiss with, that, yes, Your Honor, I believe that would, that would cure it. But the district court, actually there have been further developments. The plaintiff filed this motion, I believe, on Monday. The district court has already denied it on the ground that it lacks jurisdiction. So that is where things stand. The motion, that motion has been. So we're Marceau 4 and there's undoubtedly going to be a Marceau 5. So our, you know, I guess the issue becomes, I mean, judicial, you know, we're here, we're all ready, you're all ready, and there's something to be said for that. And we try to be judicially efficient. But sometimes trying to fit a square peg into a round hole doesn't really, you know, it, you know, we can't overreach either. So are you, you know, I guess is your position that we have to dismiss it for lack of jurisdiction or you're saying secondarily a 54B certification might work but it might not? So. Well, no, Your Honor, we're saying that secondarily it would work. We believe that that is, that that course would solve the problem, that this court could in the interest of judicial economy allow the plaintiff to go back to district court and actually do this correctly, get an order, the 54B certification, and also the order making it clear that the district court specifically and explicitly denied injunctive relief. So that would take care of the problem. And as the court recognized, the government did try to save this court's jurisdiction because it does want to resolve this matter, and it is certainly sympathetic to the fact that this case has gone on for so long. All right. That being said, why don't you, we still have to deal with jurisdiction, and I have, we obviously haven't conferenced, and so I can't say what's going to happen. Why don't you deal with the merits of the case? Because in any event, I don't see that we would want to see the parties back again. I mean, if we wanted, this is, we're here for oral argument, and then we all go back to far ends of the earth, back to our chambers. I understand, Your Honor. As do both of you go back to wherever, whence you came, to Montana, to D.C., or whatever. Well, Your Honor, with respect to the merits, we don't have a great deal to add to the colloquy between the court and plaintiff's counsel and to what we've already said in our briefs and to the district court's decision. We believe that it's clear that this case is barred by the statute of limitations that plaintiffs first count, which... Are you saying 1980 is the last time? That's correct, Your Honor. That is the last conceivable time. And then is your position on the second issue, that the plaintiffs cannot point to any requests for assistance that had improperly ignored for some of the requests that they cite, had had no obligation to respond, and for others did respond by distributing funds as prescribed by relevant statutes and regulations, and that that's all you were required to do? Is that your... That's absolutely... Have I summarized your argument? Yes, Your Honor, that's exactly it. And Judge Nelson discussed the two specific matter items that the plaintiffs are relying on here, the old chief letter from, I believe, April of 1999 and the Miller Memorandum of March of 1999. And as we've already demonstrated in our briefs and the district court has held, those did not satisfy the requirements of NAHASDA, because the request would have to come in an Indian housing plan, and that those, by no stretch of the imagination, can those two items be characterized as part of the Indian housing plan? Well, I noticed that Counsel Wax sort of was poetic that Judge Pegersen was not here with us, but that being said, is he asking us to do things that go beyond the judicial branch? Well, yes. Because he's saying there's... But he's basically saying, as I understand his argument, that there's these toxic situations that people are having to live in and that someone's got to do justice and that everyone is sort of washing their hands of it and looking to us as the backstop of all that is just and saying you've got to do something. Tell me your response to that. Again, yes, Your Honor. There's no basis for the kind of relief that the plaintiffs are requesting here. The plaintiffs have gotten full funding under NAHASDA, and they get approximately between $6 million and $7 million a year and have been since 1999. And if their Indian housing plans talk about these repairing, renovating the houses and fixing these wooden foundations, they can use that money for that purpose as well. And even in the 1990s they received, I believe, $41.5 million, and again, that under the comprehensive grant program, and that money could have been used for that purpose as well. But they're asking for relief that cannot be provided by a court because there is no basis for it in the statute or the regulations. And HUD has been sympathetic and has attempted to work with the plaintiffs, and the record shows this repeatedly. We've cited incidents in our brief. There have been many meetings. I believe they're cited in the record. The Haringara letter talks about a meeting in 1998, where HUD provided, gave plaintiffs advice as to how they could possibly secure funds to remedy this. The Cuomo letter that's also cited in our brief, the Cuomo letter to, I believe, Senator Burns did the same thing. The DeSalle letter, Assistant Secretary DeSalle, again, that was from, I believe, 1998. The Cuomo letter was from 2000. There were meetings in 2002 involving a HUD representative, Mike Boyd, who again proposed ways that the housing authority, because the housing authority is the relevant actor here and must take the steps, that it could secure funding for other funding, for instance, through the Indian Community Development Block Program or through HUD's Healthy Homes Grant Program. These are other options that were presented to the plaintiffs, but what they cannot do is secure the kind of relief that they are seeking here, which is just an open-ended order to fix these houses. All right. I think I understand your argument. Are there any additional questions? Did you have any additional comments? No, Your Honor. Again, it's fully set forth in our briefs and in the district court's decision, and we would urge if the court concludes that it has jurisdiction or that it allows the plaintiffs to solve the jurisdictional problem, we would urge the court to affirm the judgment of the district court. Thank you. Thank you. I believe you have two minutes and five seconds left. Thank you, Your Honor. I did want to comment, number one, about the dismissal without prejudice. I think there is some issue. There are cases in other courts, although this Ninth Circuit hasn't decided the case specifically, I hope the CLABEL, 457 Fed 3rd at 784 on page 790, a 2006 case of the Eighth Circuit, said that there's nothing left to decide once you dismiss without prejudice. The Fifth Circuit, U.S. v. Medlin, in 767 Fed 2nd, 1104, 1985 case, says there's no claims left. The judgment then becomes final. The Ninth Circuit raises some questions about dismissal without prejudice, but those were all with the principal defendant. Here we are dismissing claims that were not involved in the original case. That doesn't make any difference anymore, does it? He said the district court rejected your motion. That's correct. I just want to appeal from that. Order. That's correct. I don't know why you're arguing that. Well, okay. I am hoping that, in fact, at last resort, if you cannot resolve the jurisdiction question with the arguments I made earlier, that, yes, you would do it on a limited basis and we can do one of two things or both things, that is apply for a Rule 54B order or number two, that we could dismiss these parties and that then there would be final judgment, one or the other, and I think we can proceed. So I'd like to then go on with the issues on the merits. The issues on the merits, I believe, are health issues versus structural issues. If you don't buy that argument, I guess we lose. But I think there is a distinct difference, and, yes, I think that's important. The same questions, the question about whether they have a duty to respond, the same questions were presented in the Indian housing plan in every case, every year since 1997, and it was in the request for the annual contribution contract. That's in the record. It's already there. And, no, there is not enough money in these little items that they have presented every year. $800,000 does not fix 156 houses. It's, we think, going to cost about $24 million. There's just no money there for it. You need to wrap up your 30 seconds overtime. So conclude your sentence. I just request that you try and help these people get a safe, decent, and sanitary home. Thank you. Thank you both for your argument. This matter will stand submitted.
judges: Nelson, Tashima, Callahan